**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

FILED

99 FEB -1 PM 3: 53

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| BEVERLY ECHOLS; FATINA GRAY;<br>ELIZABETH CAMPBELL; and<br>KESHIA CATER,[1]<br><br>Plaintiffs,<br><br>vs.<br><br>VALLEY PRODUCTS CO., INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. CV-97-S-2901-NE<br>)<br>) **ENTERED** CN<br>)<br>) FEB 0 1 1999 |

## MEMORANDUM OPINION

Plaintiffs commenced this action on October 31, 1997, alleging

claims under Title VII of the Civil Rights Act of 1964 as amended,

42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.  The complaint[2]

alleges that each plaintiff suffered discrimination on the basis of

her race (African-American), and that plaintiffs Fatina Gray and

Elizabeth Campbell suffered retaliation for filing charges of

discrimination with the Equal Employment Opportunity Commission.

Following discovery, plaintiffs narrowed the claims they allege to

claims "regarding termination and failure to hire."[3]  (Plaintiffs'

---

[1] The parties refer to plaintiff Cater as both "Keshia" and "Keisha."  The
court will follow the appellation in the complaint and use "Keshia."

[2] Plaintiffs filed both an original (Doc. No. 1) and an amended complaint
(Doc. No. 10).

[3] The following excerpt from plaintiffs' response reflects this
"narrowing": "Based upon the discovery record, the plaintiffs do not seek
separate remedy [*sic*] for hostile environment racial harassment, disparity in

brief in opposition, Doc. No. 23, at 1-2.)  Plaintiffs describe their remaining claims as follows:  "All four plaintiffs allege unlawful race discrimination.  Gray and Campbell also allege unlawful retaliation.  All four plaintiffs seek a remedy for separation from their jobs at Valley.  Echols, Gray and Cater also present a claim for not being hired into a regular full time position."  (*Id.* at 1.)  These plaintiffs seek declaratory and injunctive relief, back-pay, front-pay, reasonable value of benefits lost, and damages.  This action presently is before the court on defendant's motion for summary judgment.[4]

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." (Emphasis added.)  The movant bears the initial burden of showing

---

promotions, demotions, compensation, benefits, job assignments, or terms and conditions of employment."  (Plaintiffs' brief in opposition, at 1.)

[4] Defendant also filed separate motions requesting that this court strike the affidavits of each respective plaintiff.  The court addresses these motions by separate order entered contemporaneously herewith.

2

the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not

3

prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

4

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to plaintiffs.

## II. FACTS

Defendant, Valley Products Co., Inc. ("Valley"), manufactures "gaskets and die-cut parts." (Defendant's brief in support, at 1.) Jim Collins is the general manager of Valley, and Paula Sutton is the controller of Valley and also serves as the human resources manager and office manager. Collins and Sutton are white.

From time to time, Valley contracts with A.J. Associates, Inc. ("Associates"), a temporary employment agency, to obtain temporary employees. In 1996, Valley requested that Associates provide temporary employees to perform unskilled general labor, specifically, to sort gaskets. Associates provided plaintiffs to Valley, filling this need.

Plaintiffs each sought regular employment with Valley. Only Campbell was hired directly by Valley. The chart below sets out the history of Valley's temporary workers who were hired into regular, full-time positions at Valley and how plaintiffs fit into this history.[5] For ease of comparison, the court first sets out

---

[5] The complete history of temporary employees at Valley indicates that not being hired into a permanent position was common. In fact, Exhibit A-1 to Sutton's affidavit indicates that during the period beginning May 23, 1994 and

5

the date Valley "terminated" each plaintiff's employment: (1) Echols, December 27, 1996; (2) Gray, April 2, 1997; (3) Campbell, July 11, 1997; and (4) Cater, January 16, 1997.

| NAME (race, abbrev.) | Date began work at Valley | Date hired by Valley |
|---|---|---|
| Tara Metcalf (b) | 5/23/94 | 7/25/94 |
| Felicia Devaney Moody (w) | 2/8/95 | 10/2/95 |
| Gwen Cooper (b) | 1/13/96 | 8/19/96 |
| **Elizabeth Campbell (b)** | 4/27/96 | 10/28/96 |
| Angela Hennessee (w) | 4/27/96 | 3/31/97 |
| Angela Garner (w) | 7/29/96 | 12/2/96 |
| Ann Mangum (w) | 8/12/96 | 3/31/97 |
| **Fatina Gray (b)** | 8/12/96 | ----- |
| **Beverly Echols (b)** | 8/21/96 | ----- |
| Martha Douglas (b) | 9/8/96 | 3/31/97 |
| **Keshia Cater (b)** | 9/16/96 | ----- |
| Denise Chatman (b) | 12/17/96 | 9/1/97 |
| Shannon Parker (w) | 1/17/97 | 9/1/97 |
| Vicky Clayton (w) | 1/24/97 | 9/1/97 |
| Jeannie Wallace (w) | 9/8/97 | 12/8/97 |

(*See* Defendant's brief, at 21-22; Sutton affidavit, exhibit A-1.)

---

ending March 16, 1998, Valley used 92 temporary workers, only 13 of whom Valley hired into permanent employment. Furthermore, at least 31 of the 92 temporary workers were black (the race of some employees is not listed), and 6 of the 13 actually hired by Valley were black.

6

Sly Brown, who is black, served as plaintiffs' supervisor until his death in October, 1996. At that time, Valley promoted plaintiff Campbell[6] and Angela Garner, who is white, to the positions of co-supervisors. Roughly one month later, Valley relieved Campbell of her supervisory duties but maintained her increased rate of pay. Garner assumed the duties she once shared with Campbell.

Plaintiffs allege that Garner treated employees differently because of their race, including threatening to fire plaintiffs. (*See* Echols affidavit, ¶ 13; Cater affidavit, ¶¶ 4, 14.) Plaintiffs also contend Garner and others uttered racial slurs in the workplace. (*See* Echols affidavit, ¶ 14; Campbell affidavit, ¶ 21; Cater affidavit, ¶ 15.) Furthermore, plaintiffs allege that white employees, three in particular, had poor attendance records but maintained employment. (*See* Campbell affidavit, ¶ 20; Cater affidavit, ¶ 13.) Valley disputes the allegation of disparate treatment and submits *via* affidavit that the employees plaintiffs cite also were terminated for violation of work rules: two for poor attendance and one for disrespectful conduct. (*See* second Sutton affidavit.)

---

[6] Valley hired Campbell as its employee on October 28, 1996. Valley never hired the other plaintiffs. (Defendant's brief in support, at 3.)

7

Plaintiff Echols filed a charge of discrimination with the Equal Employment Opportunity Commission on January 17, 1997. Gray filed her first such charge on February 12 and an amended charge on April 8, 1997. Campbell filed a charge of discrimination on February 12, and an amended charge on April 10, 1997. Finally, plaintiff Cater filed her charge of discrimination on February 22, 1997.

The discussion that follows details events particular to the employment of the respective plaintiffs.

## A. Beverly Echols

Plaintiff Beverly Echols was employed with Valley through an agreement with Associates from August 21, 1996 to December 27, 1996. Angela Garner reported that she often had to ask Echols more than once to repeat assignments and that Echols often refused assignments. (*See* Sutton affidavit, ¶ 8.)

Also during this period, Sutton received reports from Martha Douglas, who is black, Ann Mangum, who is white, and Felicia Devaney Moody, who is white, that they heard Echols threaten to "stab Angela Garner and her baby."[7] (*Id.*) Garner also told Sutton she was afraid of Echols because Echols bragged about stabbing

---

[7] Garner was pregnant at the time.

8

someone. (*See* Sutton deposition, at 101-105.) Echols admitted she told her co-workers that she had been convicted of cutting someone. (*See* Echols deposition, at 129-30.)

Sutton contacted Collier at Associates on December 27, 1996, and asked that Associates "terminate Echols' placement at Valley because of her uncooperative attitude, inappropriate conduct, and inability to work well with others." (*E.g.*, Sutton affidavit, ¶ 8.) Echols' employment with Valley was so terminated on that day.

Echols, *via* affidavit, submits that she never threatened Garner or any other Valley employee, and that she was cooperative and conducted herself in an appropriate manner at work. Furthermore, Echols says no one in a position of authority at Valley or Associates ever accused her of threatening anyone, being uncooperative, or acting inappropriately.

**B. Fatina Gray**

Plaintiff Fatina Gray was employed with Valley through an agreement with Associates, beginning August 12, 1996. Gray made known her interest in full time employment with Valley. Valley denied Gray such employment in favor of white employees. Gray filed a charge of discrimination with the EEOC on February 12, 1996. An exchange between Gray and Sutton took place shortly after

9

Gray learned she would not be hired into one of the full-time positions. Gray recounted the conversation in her deposition:

A: I saw her, and I said, Paula, could you please come here. She said, Yes, Fatina. I said, Paula, I didn't appreciate what you—the way you told me yesterday [that Fatina would not get one of the full-time positions]. I said, If you want to have any more meetings with me in your office, for you to get in touch with my lawyer. She said, Fatina, do you have any problems?

I said No, I do not have a problem, Paula. I said, But I know you tried to set me up to make me look like a troublemaker. She said, How do you know this? I said, I know. And then she said, Well, what's your lawyer's name? I said—No. She said, what's your lawyer's name and his phone number? I said, You know my lawyer's name. You know his telephone number, so if you want to talk to him, you call him.

Q: And how did she know that?

A: I just assumed she knew it.

(Gray deposition at 124-25.)

Sutton contacted Collier at Associates and asked that someone speak to Gray about her "insubordination." Gray refused to talk to Collier. Gray's employment was then terminated, allegedly, for failure to cooperate. (*See, e.g.,* Collier deposition, at 106-07.)

Gray contends she was not insubordinate or uncooperative with supervisors. (*See* Gray affidavit, ¶¶ 6, 11-13.)

10

Gray began working at Valley the same day as Ann Mangum. Valley was aware of Gray's desire to be hired as a regular employee, but Valley hired Mangum, a white woman, instead. Gray contends she was more qualified than Mangum: "I got out more gaskets than she did. I had better times." (Gray affidavit, ¶ 14.)

## C.   Elizabeth Campbell

Plaintiff Elizabeth Campbell began at Valley as a temporary employee on April 27, 1996. She continued in this capacity until October 28, 1996 when Valley hired her directly as its employee. Campbell was promoted to a co-supervisor position, and received a pay rate  of six dollars an hour. After roughly thirty days, Valley relieved  Campbell of her supervisory duties,[8] but continued to pay Campbell the supervisor's wages until the termination of her employment. Garner remained as a supervisor.

Valley considers any absence from work exceeding the allowable time off and medical leave as "unexcused." Campbell signed a form acknowledging she had read the policy manual and she agreed to abide by its rules. (See Campbell deposition at 163-65; id.

---

[8] Valley contends it made this decision "because Sutton had been informed that Campbell no longer wanted to be a supervisor." (Sutton deposition at 109-113.)

11

exhibit 3.)  Valley contends Campbell had 86.5 hours of unexcused time, and that she had been warned "at least four times that excessive unexcused absences could result in her termination." (Defendant's brief in support, at 4.)  Valley issued three written warnings to Campbell regarding her attendance.  Valley, citing continued problems with her attendance, fired Campbell allegedly for "excessive absences."    (Defendant's brief in support, at 5 (citing several sources).)

On the other hand, Campbell contends she provided medical documentation of her illness and medical treatment.    Campbell argues that she never failed to give advance notice of her absences as required.  She knew in advance that she would be absent only once, and she gave advance notice of that appointment.    (*See* Campbell affidavit, ¶¶ 16-18.)

## D.    Keshia Cater

Plaintiff Keshia Cater was employed with Valley through an agreement with Associates, beginning September 16, 1996, and ending January 16, 1997.  Cater was absent from work fourteen days, late to work four days, and left early one day.

Valley knew of Cater's interest in a regular position.  Valley did not offer Cater such employment, and, hired white employees instead.

12

### III. DISCUSSION

Each plaintiff alleges a disparate treatment claim against Valley: that is, a claim of discrimination for being "fired" because of race.[9] Plaintiffs Echols, Gray, and Cater each assert another disparate treatment claim for an alleged discriminatory failure to hire. Finally, Gray and Campbell assert a claim for unlawful retaliation.

### A.   Framework of Analysis

Title VII of the Civil Rights Act of 1964, as amended, provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff must prove her employer intended to discriminate against her on the basis of one of the

---

[9] Valley did not fire plaintiffs Echols, Gray, and Cater: Associates actually terminated these plaintiffs' employment. Thus, plaintiffs complain that racial discrimination caused their "separation" from their employment at Valley. (See plaintiffs' brief in opposition, at 1.)

Nevertheless, the court finds that Valley had sufficient control over the plaintiffs as employees to classify Valley as plaintiffs' "employer" for Title VII purposes. See Reynolds v. CSX Transportation, Inc., 115 F.3d 860, 869 n.12 (11th Cir. 1997), vacated on other grounds, 118 S.Ct. 2364, 141 L.Ed.2d 732 (1998); see also Cobb v. Sun Papers, Inc., 673 F.2d 337, 340 (11th Cir. 1982) (holding court should use principles of agency law and consider the "economic realities" to determine who is an "employer" for Title VII purposes).

13

impermissible factors identified above, in order to prevail on a disparate treatment claim. *See id*.

Three forms of proof may be used to establish an employer's intent to discriminate: (1) *statistical proof* of a pattern of discrimination[10]; (2) *direct evidence* of a discriminatory animus, which consists of evidence that, if believed, would prove the existence of discrimination without the need to engage in inference or presumption[11]; or (3) *circumstantial evidence*. The evaluation of a plaintiff's evidence of the employer's intent differs, depending upon which form of proof is used.

Normally, however, a plaintiff does not possess direct evidence of the employer's motive. "There will seldom be 'eyewitness' testimony as to the employer's mental processes." *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716 103 S.Ct. 1478, 1482 (1983).

Even so, discriminatory intent sometimes can be inferred from circumstantial evidence. In such cases, a burden-shifting framework of analysis is applied to evaluate the strength of the

---

[10] *See, e.g.,* Wilson v. AAA Plumbing Pottery Corp., 34 F.3d 1024, 1027 (11th Cir. 1994).

[11] *See, e.g.,* Carter v. City of Miami, 870 F.2d 578, 581-82 (11th Cir. 1989).

14

plaintiff's proof and its ability to withstand a defendant's motion for summary judgment, or for judgment as a matter of law.

## 1. First step of analysis

Initially, each plaintiff has the burden of proving, by a preponderance of the evidence, a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746-47, 125 L.Ed.2d 407 (1993).

"Establishment of the *prima facie* case in effect creates a [rebuttable] presumption[12] that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254, 101 S.Ct. 1094 (quoted with approval in *St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2747).

## 2. Second step of analysis

When a plaintiff makes out a *prima facie* case, "[t]he burden ... shift[s] to the employer to <u>articulate</u>[, but <u>not prove</u>13] some

---

[12] See Walker v. Mortham, 158 F.3d 1177, 1185 n.10 (11th Cir. 1998), for an excellent discussion of the reasons why presentation of a *prima facie* case creates "a *presumption*, and not an *inference*, of intentional discrimination."

[13] *See, e.g.,* Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094 (1981)("The defendant need not persuade the court that

15

legitimate, nondiscriminatory reason [for the contested employment

decision]." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824

(emphasis supplied); *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

Justice Scalia, writing for the Court in *St. Mary's Honor Center*,

described this shift in the burden of going forward with evidence

in the following manner:

> Thus, the *McDonnell Douglas* presumption places upon the
> defendant the burden of producing an explanation to rebut
> the prima facie case—*i.e.*, the burden of "producing
> evidence" that the adverse employment actions were taken
> "for a legitimate, nondiscriminatory reason."   . . .
> "[T]he defendant must clearly set forth, through the
> introduction of admissible evidence," reasons for its
> actions which, if believed by the trier of fact, would
> support a finding that the unlawful discrimination was
> not the cause of the employment action.   . . .   It is
> important to note, however, that although the *McDonnell
> Douglas* presumption shifts the burden of production to
> the defendant, "[t]he ultimate burden of persuading the
> trier of fact that the defendant intentionally
> discriminated against the plaintiff remains at all times
> with the plaintiff," . . . .   In this regard it operates
> like all presumptions as described in Rule 301 of the
> Federal Rules of Evidence:
>
> > "In all civil actions and proceedings not
> > otherwise provided for by Act of Congress or
> > by these rules, a presumption imposes on the
> > party against whom it is directed the burden

---

it was actually motivated by the proffered reasons."); *see also*, Isenbergh v.
Knight-Ridder Newspaper Sales, Inc., 84 F.3d 1380, 1386 (11th Cir. 1996)("This
burden on the employer is one of production, not persuasion."); Busby v. City of
Orlando, 931 F.2d 764, 77 n.12 (11th Cir. 1991)("[T]his 'burden of proof' is to
be understood as a burden of production, not persuasion.") (citing Wards Cove
Packing Co. v. Atonio, 490 U.S. 642 (1989)).

16

> of going forward with evidence to rebut or
> meet the presumption, but does not shift to
> such party the burden of proof in the sense of
> the risk of nonpersuasion, which remains
> throughout the trial upon the party on whom it
> was originally cast."

*St. Mary's Honor Center*, 509 U.S. at 506-07, 113 S.Ct. at 2747
(citations to *Burdine* omitted).

If a defendant figuratively sits on its hands, and offers no
"admissible evidence which would allow the trier of fact rationally
to conclude that the employment decision had not been motivated by
discriminatory animus," *Burdine*, 450 U.S. at 257, 101 S.Ct. at
1096, then "the court must award judgment to the plaintiff as a
matter of law ...." *St. Mary's Honor Center*, 509 U.S. at 509, 113
S.Ct. at 2748.

On the other hand, "[i]f the defendant carries this burden of
production, the presumption raised by the *prima facie* case is
rebutted," *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094-95, and
"drops from the case." *Id.*, at 255 n.10, 101 S.Ct. at 1095 n.10;
*accord*, *St. Mary's Honor Center*, 509 U.S. at 507-08, 113 S.Ct. at
2747-48. "A satisfactory explanation by the defendant destroys the
legally mandatory inference of discrimination arising from the
plaintiff's initial evidence." *Burdine*, 450 U.S. at 256 n.10, 101
S.Ct. at 1095 n.10.

17

The plaintiff then has "the full and fair opportunity to demonstrate," ... "that the proffered reason was not the true reason for the employment decision," ... and that race was. He retains that "ultimate burden of persuading the [trier of fact] that [he] has been the victim of intentional discrimination." ...

*St. Mary's Honor Center*, 509 U.S. at 507-08, 113 S.Ct. at 2747-48 (citations to *Burdine* omitted).

### 3. Third step of analysis

"The defendant's 'production' (whatever its persuasive effect) having been made," *id.*, 509 U.S. at 511, 113 S.Ct. at 2749, "the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1095.

[T]he "new level of specificity" ... refer[s] to the fact that the inquiry now turns from the few generalized factors that establish a prima facie case to the specific proofs and rebuttals of discriminatory motivation the parties have introduced.

*St. Mary's Honor Center*, 509 U.S. at 516, 113 S.Ct. at 2752.

Thus, at this third level of analysis, a plaintiff has the burden of proving that the defendant's explanation is "a pretext for discrimination." To do that, plaintiff must show both that the defendant's stated reasons for the contested employment decision are false, or not worthy of belief, and that it is more likely true than not true that discrimination was the true reason.

18

[A] reason cannot be proved to be a "pretext for
discrimination" unless it is shown both that the reason
was false, and that discrimination was the real reason.

*St. Mary's Honor Center*, 509 U.S. at 515, 113 S.Ct. at 2752.

"The plaintiff [opposing summary judgment] must ... offer

specific and significantly probative evidence that the employer's

alleged purpose is a pretext for discrimination."  *Schuler v.*

*Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986).

As the Second Circuit recently explained:

a plaintiff opposing such a [summary judgment] motion
must produce sufficient evidence to support a rational
finding that the legitimate nondiscriminatory reasons
proffered by the defendant were false, and that more
likely than not the employee's [race] was the real reason
for the [contested employment action].

*Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir. 1995).

### 4.   Framework of Analysis for the Instant Case

The court finds no direct evidence of discrimination by

Valley.   The court, therefore, will apply the burden-shifting

framework of analysis described above to plaintiffs' disparate

treatment claims.

Furthermore, absent direct evidence of retaliation, the

*McDonnell-Douglas* analysis applies to the retaliation claims of

Gray and Campbell as well.  *See, e.g., Whatley v. Metropolitan*

19

*Atlanta Rapid Transit Authority,* 632 F.2d 1325, 1328 (5th Cir. 1980).[14]

## B. Wrongful Termination

The Eleventh Circuit said that to establish a *prima facie* case of discriminatory termination under Title VII, a plaintiff employee must show "(1) membership in a protected class, (2) qualification for the position held, (3) termination, (4) and replacement with a person outside the protected class." *Walker v. NationsBank of Florida,* 53 F.3d 1548, 1556 (11th Cir. 1995)(citing *Rollins v. TechSOUTH, Inc.,* 833 F.2d 1525, 1532 n.14 (11th Cir. 1987)). Furthermore, the Eleventh Circuit has "repeatedly stressed that an overly strict formulation of the elements of a prima facie case is to be avoided." *Id.* (citing *Carter v. City of Miami,* 870 F.2d 578, 583 (11th Cir. 1989)). Essentially, determining whether a plaintiff has established a prima facie case is a fact specific inquiry that asks, "[w]ould an ordinary person reasonably infer discrimination if the facts presented remained unrebutted?" *Id.* at 1556 n.12 (citing *Carter v. City of Miami,* 870 F.2d 578, 583 (11th Cir. 1989)).

---

[14] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

20

### 1. *Prima facie* case

Each plaintiff is a member of a protected class and was terminated from her position at Valley. If this court were to follow strictly the elements required to establish a *prima facie* case, however, each plaintiff would fail to establish such for failure to demonstrate, or even allege either that she was <u>replaced</u> by someone outside of the protected class, or that she was qualified for the position held or otherwise was satisfying Valley's reasonable expectations.

Nevertheless, "the *prima-facie*-case method was 'never intended to be rigid, mechanistic, or ritualistic.'"  *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1525 (11th Cir. 1991) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)).  Thus the court will consider the facts presented to determine whether "an ordinary person [would] reasonably infer discrimination if the facts presented remained unrebutted."  *Walker*, 53 F.3d at 1556 n.12.

Each plaintiff is an African-American who was hired "to perform unskilled general labor to sort gaskets" on a temporary basis.  (Defendant's brief, at 3.)  Each plaintiff disputes the legitimacy of the reasons stated for her termination.  Furthermore,

21

other employees maintained their positions which were similar to plaintiffs', and some of these other employees were white.

However, plaintiffs Echols and Cater have not established, or even alleged, they were qualified for the positions held, or that they otherwise were performing adequately. Moreover, no plaintiff establishes that she was actually replaced by someone outside the protected class.[15]

Nevertheless, the affidavits establish that some white women in similar positions retained their jobs despite allegedly committing equivalent or worse violations of work rules than those of which plaintiffs are accused of committing. (*See* Campbell affidavit ¶¶ 8, 20, 22; Cater affidavit ¶ 13.) Given the unique situation of plaintiffs as temporary employees, the court finds that strictly requiring proof of actual "replacement" would be too stringent an application of the *prima-facie*-case method. Rather, the court finds evidence that temporary employees outside of the

---

[15] Plaintiff Elizabeth Campbell's claim for wrongful termination may be distinguished because Campbell had been hired as a permanent employee before she was ultimately terminated. (*See, e.g.*, Campbell affidavit, ¶ 4.) Campbell's affidavit establishes that she was hired as a regular employee and placed into a supervisory position. (*See id.*, ¶ 4.) Although she was later relieved of her supervisory duties, Campbell remained an employee for some time thereafter. (*See id.*, ¶ 5.) From this history of employment, the court can infer that Campbell was qualified for her initial position. It was this position from which she was fired. Furthermore, Valley hired other persons into permanent positions, at least one of which was white. (*See* brief of defendant, at 21-22.)

22

protected   class   maintained   their   positions   sufficient.
Nevertheless, Valley provides the hiring records in its brief, and
they support plaintiffs' *prima facie* cases.[16]   (Defendant's brief,
at 22.)

Furthermore, although only plaintiff Gray presents evidence of
her qualifications, the court will assume each plaintiff was
qualified for what Valley describes as "unskilled general labor to
sort gaskets" (*id*. at 3), and was otherwise performing the
essential functions of said job to the reasonable satisfaction of
Valley.   In fact, defendant's only argument in brief against
plaintiffs' *prima facie* cases is the single sentence that "[t]here
is no substantial evidence to support a prima facie case of
discrimination on behalf of any of the plaintiffs."   (*Id*. at 10.)

Accordingly,   the   court   finds   that   each   plaintiff   has
established a *prima facie* case of termination because of race, and
the burden of production shifts to Valley to articulate legitimate,
nondiscriminatory   reasons   for   the   terminations   of   plaintiffs'
employment.

---

[16] The table depicting the history of hiring at Valley demonstrates that
some employees Valley hired into positions plaintiffs sought were white.   *See*
Walker v. Mortham, 158 F.3d 1177, 1186 n.19 (11th Cir. 1998); *see also* discussion
*infra* Part III.C.

23

**2.   Defendant's burden: legitimate, nondiscriminatory reasons**

Defendant Valley has produced reasons sufficient to satisfy its burden.   These reasons are stated below.

### a.   Beverly Echols

Valley contends it requested the termination of Echols' association because of Echols' reported behavior.   Valley provides evidence of the specific articulated reasons arising from these reports:   "[Echols'] uncooperative attitude, inappropriate conduct and inability to work well with others."   (Defendant's brief, at 6 (citing several depositions).)   These include a report of Echols' statement threatening to "stab Angela Garner and her baby."   (*See* Sutton affidavit, ¶ 8.)   Moreover, Echols' immediate supervisor reported that she often had to ask Echols several times to complete assignments and that Echols often refused assignments.   (*See, e.g.,* *id.*)

Valley has carried its burden.   *See Corbin v. Southland International Trucks*, 25 F.3d 1545, 1550 (11th Cir. 1994); *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989) (finding legitimate, nondiscriminatory reasons for discharge to include "her insubordinate attitude [and] her difficulty in working

24

with fellow employees"); *Chalk v. Secretary of Labor*, 565 F.2d 764, 768 (D.C. Cir. 1977) ("[S]everal courts have held that a decision to fire or not to hire a person because of his or her disruptive or uncooperative conduct is proper.") (collecting cases).

### b. Fatina Gray

Valley cites Fatina Gray's insubordination and failure to cooperate as the bases for the decision to fire her. Specifically, Valley says in its brief, "[b]ecause Gray would not speak with her supervisors at Valley or her employers at [Associates], her employment was terminated for failure to cooperate." (Defendant's brief, at 8 (citing Collier deposition, pp.106-07, Sutton affidavit, and Sutton deposition, pp. 137-39).)

Valley has carried its burden. *See Corbin*, 25 F.3d at 1550; *see also Williams*, 871 F.2d at 456; *Chalk*, 565 F.2d at 768.

### c. Elizabeth Campbell

Valley contends it fired Elizabeth Campbell because of her alleged incessant, excessive absenteeism. Valley asserts that Campbell took a total of 114 hours of paid time off and medical leave and, in 1997, was absent "86.5 hours in excess of her excused paid time off and allowable medical leave." (Defendant's brief, at 4.) Furthermore, Valley warned Campbell at least four times that

25

such excessive absences could lead to termination. (*See id.*)
Ultimately, [a]fter the third written warning, one oral warning and
continued absences, Sutton advised Campbell on July 11, 1997 that
her employment with Valley was being terminated for excessive
absences." (*See, e.g.*, Sutton affidavit, ¶ 5.)

Valley has carried its burden. *See Ross v. Buckeye Cellulose
Corporation*, 980 F.2d 648, 656-57 (11th Cir. 1993).

### d. Keshia Cater

Valley asserts reasons for firing Cater similar to those for
firing Campbell. In short, Valley establishes the following *via*
affidavit of Paula Sutton: during the four months Cater worked at
Valley, she was absent fourteen days, late to work four days, and
left early once. The event triggering termination, according to
Valley, was that Cater missed a day of work without giving prior
notice to anyone at Valley. On that day, Sutton effectively
terminated Cater's placement with Valley. (*See* defendant's brief,
at 7.)

Valley has carried its burden. *See Ross*, 980 F.2d at 656-57.

### 3. Plaintiffs' burden: proving pretext

Plaintiffs begin their arguments collectively, reiterating
that "all four plaintiffs are black persons" and that their

26

supervisors Jim Collins (general manager) and Paula Sutton (human resource manager) are white persons. (Plaintiffs' response, at 2.)

### a. Beverly Echols

Plaintiff Echols asserts the following to demonstrate pretext:

> Echols never threatened Angela Garner or any Valley employee. (Echols aff., ¶ 4) She was cooperative and conducted herself appropriately at work. (Echols aff., ¶ 6) No one in a position of authority at Valley or the temporary agency ever accused her of threatening anyone or of being uncooperative or conducting herself inappropriately at work. (Echols aff., ¶¶ 5,7) Instead, the temporary agency told her she was over-qualified. (Echols aff., ¶ 10)

(Plaintiffs' response, at 3.)

The issue regarding Echols' alleged threats is not whether she actually made them; rather, the issue is whether Valley reasonably believed that she had. See *Elrod v. Sears, Roebuck and Company*, 939 F.2d 1466, 1470-72 (11th Cir. 1991). Valley received complaints from three employees specifically regarding the threat to Garner. Furthermore, Garner reported her fear of, and discomfort around Echols. Finally, Echols admitted to having mentioned to her co-workers that she had been convicted of cutting someone. Valley reasonably believed that Echols made this threat.

Accordingly, this court finds Valley's articulated nondiscriminatory reasons for terminating Echols' employment were not pretextual. See *Elrod v. Sears, Roebuck and Company*, 939 F.2d

27

at 1470-72; *see also*, *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132-33 (7th Cir.1994) (finding employer's reasonable belief of employee threatening two co-workers with knife sufficient cause for discharge). Thus, summary judgment is due to be granted for this claim.

### b. Fatina Gray

Plaintiff Gray asserts only the following to demonstrate pretext: "Gray was not insubordinate or uncooperative with supervisors. (Gray aff., ¶¶ 6, 11-13)." (Plaintiffs' response, at 4.)

Valley contends the articulated basis for the decision went further than mere failure to cooperate with supervisors. Rather, Valley alleges it was much worse: "[s]he would not speak to them at all." (Defendant's reply, at 6.)

The court finds Gray's proffered evidence insufficient to demonstrate pretext. Gray admitted to being obstructionist, at least. (*See* Gray deposition, at 121-30.) While the court finds the exchanges in issue to be a legitimate basis for purposes of defending this claim, the court will revisit these facts in Gray's claim for retaliation. Nevertheless, summary judgment is due to be granted for this claim.

28

## c.   Elizabeth Campbell

### (1)  Attendance record

Plaintiff Campbell contests the legitimacy of Valley's stated

reasons in her attempt to show the reasons are a pretext for racial

discrimination.

> Campbell did not have excessive unexcused absences.  She
> provided medical documentation of her illness and medical
> treatment.  (Campbell aff., ¶ 17) Campbell never failed
> to give advance notice.  There was only one occasion in
> which she absent [sic] for a reason she knew in advance,
> when she had an appointment which necessitated leaving
> two hours early.  She gave advance notice.  (Campbell
> aff., ¶ 16)

(Plaintiffs' response, at 4.)

Campbell focuses on the allegation that she did not give

advance notice of some of her absences.  Campbell's focus is

misplaced.  Campbell was warned repeatedly (including a "final

warning") of her poor attendance, and that she was expected to

improve.  (See Sutton affidavit, exhibits A-2, A-3, A-4.)

### (2)  Differential application of work rules

Although plaintiff Campbell appears to abandon her claims that

white employees had similar attendance problems but maintained

29

employment, the court will analyze those allegations to determine

if they may demonstrate pretext.[17]

The Eleventh Circuit held in *Jones v. Gerwens*, 874 F.2d 1534

(11th Cir. 1989), that:

> in cases involving alleged racial bias in the application
> of discipline for violation of work rules, the plaintiff,
> in addition to being a member of a protected class, must
> show either (a) that he did not violate the work rule, or
> (b) that he engaged in misconduct similar to that of a
> person outside the protected class, and that the
> disciplinary measures enforced against him were more
> severe than those enforced against the other persons who
> engaged in similar misconduct.

*Jones*, 874 F.2d at 1540. That holding was questioned in *Jones v.*

*Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 n.6 (11th

Cir. 1998), in which the Eleventh Circuit wrote:

> Considering the facts in *Jones*, our impression is
> that words about "did not violate the work rule" are
> unnecessary to the decision in *Jones* and are dicta; but
> we will discuss them. The pertinent words in *Jones*
> demand not two, but three elements: (1) the plaintiff is
> a member of a protected class; (2) the plaintiff has
> engaged—either (a) disputedly or (b) admittedly—in
> misconduct similar to persons outside the protected
> class; and (3) that similarly situated, nonminority

---

[17] No plaintiff asserts a cause of action for disparate treatment in the application of disciplinary measures, yet plaintiffs allege such disparate treatment in an attempt to demonstrate "racial bias in the workplace" sufficient to raise a genuine issue of fact. Plaintiffs cite the affidavits of Campbell and Cater. (*See* plaintiffs' response, at 11.) The court construes these assertions as an attempt to demonstrate pretext and, therefore, a triable issue of fact. Nevertheless, to determine the merit of these allegations, the court conducts the analysis as it would a cause of action for such disparate treatment.

30

employees (that is, persons outside the protected class) received more favorable treatment.

We stress that, under the *Jones* formulation, no plaintiff can make out a prima facie case by showing just that she belongs to a protected class and that she did not violate her employer's work rule. The plaintiff must also point to someone similarly situated (but outside the protected class) who disputed a violation of the rule and who was, in fact, treated better.

Therefore, to establish a *prima facie* case of disparate treatment in the application of disciplinary measures, a plaintiff must show: (1) that she is a member of a class of persons protected by Title VII; (2) that she engaged—either disputedly or admittedly—in misconduct similar to that of similarly situated co-employees outside the protected class; and (3) that the similarly situated co-employees outside the protected class received more favorable treatment than plaintiff: that is, despite such similarities, "the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct." *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989).

With regard to the second element of a prima facie case, plaintiff must show that she and the co-workers with whom she compares herself were "similarly situated in all relevant respects." *Jones v. Bessemer Carraway Medical Center*, 137 F.3d

31

1306, 1311 (11th Cir. 1998)(quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). Essentially, this means—as the Tenth Circuit held in *Aramburu v. The Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997)—that the plaintiff must prove: (i) that the work misconduct allegedly committed by her was the same as, or substantially similar to work-rule offenses committed by other employees outside the protected class; and (ii) that both she and her co-employee comparitors worked under the same supervisors and, therefore, were subject to the same standards governing performance evaluations and discipline.

> To assert a claim of disparate treatment, the plaintiff must show that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness. ... "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." ... A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated. ...

*Aramburu*, 112 F.3d at 1404.

Elizabeth Campbell fails to establish the second and third elements of the claim that white employees were subjected to less severe disciplinary measures for similar violations of the

32

attendance policy.  The only evidence Campbell proffers in support

of this allegation is found in Campbell's affidavit:

> 8. White employees, including Glenda Troyer, Angela
> Hennessee and Deborah Lindley were allowed to keep their
> jobs even though they frequently late [sic] or absent.
> . . .
> 19. During the time that Mr. Brown was supervisor,
> I observed that Glenda Troyer was late or absent very
> frequently.   The Company took no disciplinary action
> against her as far as I know.
> 20. During the time that I was supervisor, I noticed
> that Angela Hennessee and Deborah Lindley were late or
> absent very frequently.  The Company took no disciplinary
> action against either of them as far as I know.

Campbell's vague statements are insufficient to establish that the

three white employees were similarly situated (in fact they

strongly suggest Troyer was not), that those employees had a

similar attendance record, or that they were subjected to less

severe disciplinary measures.  The court merely notes that Valley

contends it terminated the employment of the three women Campbell

cites, two for poor attendance and one for disrespectful conduct.

Accordingly, this court finds Valley's articulated

nondiscriminatory reasons for terminating Echols' employment were

not pretextual and summary judgment is due to be granted for this

claim.

33

### a. Keshia Cater

#### (1) Attendance record

Plaintiff Cater also contests the legitimacy of Valley's stated reasons in her attempt to show the reasons are a pretext for racial discrimination.

> Cater was not excessively absent or tardy. (Cater aff., ¶¶ 5, 6, 8, 9, 12).[16] When she was separated, Valley told her they thought she had quit; the company made no mention of excessive absenteeism or tardiness. (Cater aff., ¶ 10) Valley's contention about the period from December 23 to January 16, 1997, is a false reason. During the holiday period, work for temporaries was scheduled on a voluntary sign-up basis, and Cater did not sign the voluntary list. (Cater aff., ¶ 8)

(Plaintiffs' response, at 3.)

Valley disputes Cater's portrayal of its attendance policy during the holidays. (Defendant's reply, at 5.) Even considering that issue in a light most favorable to Cater, the court finds Cater otherwise was absent from work fourteen days and was late several others during her brief, four month stint at Valley.

#### (2) Differential application of work rules

Cater has also alleged differential application of disciplinary rules. In paragraph twelve of her affidavit, Cater

---

[16] The court has stricken paragraphs 5 and 12 of Cater's affidavit which serve as the direct support of the first statement in this portion of plaintiffs' response. See the separate order entered contemporaneously herewith which addresses the challenges to plaintiffs' affidavits.

34

states that "[w]hite employees, including Angela Hennessee, Glenda Troyer and Deborah Lindley were allowed to keep their jobs even though they frequently late [sic] or absent. I did not keep records on Angela, Glenda or Deborah, but I observed they were late or absent more than I was."

Cater's effort to demonstrate discrimination in the application of disciplinary rules fails for the reasons identified above, in the analysis of such effort by Campbell.

Accordingly, this court finds Valley's articulated nondiscriminatory reasons for terminating Echols' employment were not pretextual and summary judgment is due to be granted for this claim.

## C. Failure to Hire

A plaintiff establishes a *prima facie* case of discrimination for a failure to hire her into a position that is filled by the employer after plaintiff's rejection, by showing: (1) she belongs to a class of persons protected by Title VII; (2) she applied for, and was qualified to fill, a position for which the defendant employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) following her rejection, the position was filled by a person outside the protected class. *See Walker v.*

35

*Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998); *see also, e.g.,* *Crawford v. Western Electric Co.*, 614 F.2d 1300, 1315 (5th Cir. 1980) ("[P]laintiffs may establish a prima facie violation by showing that they are members of a group protected by [T]itle VII, that they sought and were qualified for positions that [the defendant-employer] was attempting to fill, that despite their qualifications they were rejected, and that after their rejection [the employer] either continued to attempt to fill the positions or in fact filled the positions [with persons outside the plaintiff's protected class].").

In cases where a plaintiff applies for a position for which numerous openings exist, it often is difficult, if not impossible, to determine which successful applicant was awarded the position sought by the rejected plaintiff. It thus becomes difficult, if not impossible, to compare the class status of the plaintiff to a successful, competing applicant. "In such a situation," the Eleventh Circuit recognizes that "it is sufficient to identify <u>any</u> successful applicant for the position." *Walker v. Mortham*, 158 F.3d 1177, 1186 n.19 (11th Cir. 1998) (emphasis in original). "A plaintiff ... need not identify the successful applicant for a position under the *McDonnell-Douglas* prima facie framework; she is

36

only required to establish that the successful applicant is not within her protected class." *Walker*, 158 F.3d at 1193.

## 1. *Prima facie* case

The *prima facie* case requirements of a failure to hire claim are substantially similar to those of a wrongful termination claim. Moreover, plaintiffs Echols, Gray, and Cater offer more specific allegations and factual assertions of who was hired into the permanent, full-time positions they sought, compared to their assertions in support of their wrongful termination claims.[19]  For the reasons discussed in the analysis of the wrongful termination claims, the court finds plaintiffs have stated a *prima facie* case for a discriminatory failure to hire.

## 2.   Defendant's burden: legitimate, nondiscriminatory reasons

Defendant Valley has articulated legitimate nondiscriminatory reasons sufficient to satisfy its burden of production.   These reasons are provided above.

## 3.   Plaintiffs' burden: proving pretext

This third stage of the analysis also follows such analysis for the wrongful termination claims.

---

[19] Plaintiff Campbell does not assert a failure to hire claim.

37

Accordingly, summary judgment is due to be granted for these claims.

## D.   Retaliation

Section 704(a) of Title VII, now codified at 42 U.S.C. § 2000e-3(a), provides protection to those employees who oppose or participate in uncovering an employer's discriminatory practices:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because [the employee] has opposed any practice made an unlawful employment practice by this [title], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title].

Congress thus recognized two bases for a claim of retaliation:  one for <u>opposition</u> to discrimination ("because [the employee] has opposed any practice made an unlawful employment practice by this [title]"); and, another for <u>participation</u> in protected activity ("because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title]").

Plaintiffs Gray and Campbell allege that Valley terminated their employment because of, and in retaliation for their protected activity.   The court finds that genuine issues of material fact exist as to these claims.  Thus, summary judgment is inappropriate.

38

## IV. CONCLUSION

Accordingly, defendant's motion is due to be granted in part and denied in part. The claims that remain pending in this case are the two for retaliation, asserted by plaintiffs Campbell and Gray, respectively. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this **12** day of February, 1999.

United States District Judge

39